IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL L. KATHREIN,        )
                            )
            Plaintiff,      )
                            )
    v.                      )   No. 05 C 1718
                            )
R. J. SIEGEL,               )
                            )
            Defendant.      )

## MEMORANDUM OPINION AND ORDER

### Procedural Background

On August 23, 2005 this Court issued its memorandum opinion and order (the "Sanctions Opinion," Ex. 1 to this Opinion) granting the Fed. R. Civ. P. ("Rule") 11 motion for sanctions that had been filed by counsel for defendant R.J. Siegel ("Siegel") against pro se plaintiff Michael Kathrein ("Kathrein"). After Kathrein appealed both that order and this Court's substantive decision dismissing this action, on February 7, 2006[1] our Court of Appeals issued its unpublished order ("Appellate Order") that (1) affirmed this Court's dismissal on a ground different from the one that this Court had applied[2] and (2) remanded the sanctions issue for reconsideration

---

[1] All other events relevant here also occurred this year, so that from this point forward the year references to 2006 will be omitted.

[2] After initially finding the Rooker-Feldman doctrine (one of the alternative grounds asserted by Siegel's counsel, based on an order entered in the related state court litigation between Kathrein and Michael Monar ("Monar")) inapplicable to this lawsuit by Kathrein against Siegel, this Court gave the matter

in light of the Court of Appeals' disposition of the case.

While this Court awaited the Court of Appeals' mandate so that it could proceed with such reconsideration, Kathrein occupied himself with the preparation of a motion calling for this Court's recusal, which he filed on February 24. After Siegel's counsel had filed a response, on March 13 this Court denied Kathrein's motion and ordered simultaneous April 10 filings by the litigants on the sanctions issue, also scheduling an April 13 status hearing to inquire whether the parties' simultaneous filings had still left either or both sides desirous of further submissions because they had not engaged each other head-on.

Although the parties did tender the required contemporaneous April 10 submissions (in material part Kathrein's filing occupied itself with a total mischaracterization of the purely procedural April 13 scheduled date as one assertedly calling for an evidentiary hearing--see this Court's attached "April 12 Memorandum," Ex. 2 to this Opinion), Kathrein preceded his filing with an April 7 Emergency Petition for a Writ of Mandamus before

---

further consideration and changed its view. But the Appellate Order held that this Court had been right the first time around--that Rooker-Feldman did not apply--and affirmed the dismissal because of the insufficiency of Kathrein's claim in Rule 12(b)(6) terms.

the Court of Appeals.[3] This Court promptly issued the April 12 Memorandum, recounting the above background and stating that the April 13 status hearing would be retained but that this Court would defer any action of a substantive nature until the mandamus petition had been ruled upon. When Kathrein stated at the April 13 status hearing that he did wish to tender a further submission, that request was of course granted as fulfilling the entire purpose of the April 13 session.

On May 4 Kathrein filed his additional papers--a one-page document captioned "Court Response to Defendant's April 10 Memorandum in Support of Imposing Sanctions and Motion for Clarification," a 13-page Memorandum of Law ("May 4 Memorandum") in support of that response and five exhibits comprising some 33 pages. Then on May 8 the Court of Appeals denied Kathrein's mandamus petition in a one-page order, so that this Court can at last address the issue of sanctions as earlier directed by the Court of Appeals.

## Additional Background

Regrettably, Kathrein's most recent filing exemplifies his inability to refrain from personal attacks--something that has marked (1) his bitter litigation with Monar that spawned this lawsuit as well, (2) his actions against the two Illinois state

---

[3] That was Kathrein's second effort of that type targeting this Court--see Appellate Order at 9.

3

court judges who dealt with his bitterly-contested litigation with Monar, (3) his charges against the Schuyler, Roche and Zwirner law firm that represents both Monar and Siegel (the latter because it was his retention as an expert in the Kathrein-Monar litigation that led to his being targeted as the defendant in this action, so that Monar has borne the cost of representation here), (4) his charges against this Court and even (5) his pejorative characterizations of our Court of Appeals for having upheld Judge Coar's and this Court's decisions against him. All of that has continued to and through Kathrein's May 4 filing, with his ad hominen attacks in that filing being discussed later.

## Rule 11 Sanctions?

What emerges from almost all of Kathrein's actions is the conclusion that, just as Judge Paddy McNamara in the state court has awarded sanctions against Kathrein for improper conduct in the litigation before her, and just as this Court's colleague Judge David Coar has imposed nearly $57,000 in Rule 11 sanctions against him because of the frivolousness of his 04 C 7324 lawsuit against Monar, the Schuyler law firm and the two state court judges, so his commencement and prosecution of this action were lacking in the good faith required by Rule 11(b), both subjectively and objectively. As indicated hereafter, Kathrein contends otherwise--he disputes, for example, the content of an

4

affidavit in which a member of the Schuyler law firm has sworn that Kathrein acknowledged back in 2004 that his main goal in the two then-pending state court Kathrein-Monar lawsuits was to make the litigation process as expensive for Monar as possible ("to increase the amount of attorneys' fees paid by Monar")--but Kathrein's actions belie his disclaimer. This action is clearly another part of his campaign to make life as painful and expensive for Monar as possible.[4]

As the record reflects, the Schuyler firm was careful to comply with Rule 11(c)(1)(A) by giving Kathrein a detailed notice of the deficiencies in this lawsuit, thus providing him with the opportunity to withdraw the case without risking sanctions. Kathrein ignored that and pressed forward vigorously. That failure to take the escape route introduced into Rule 11 by the 1993 amendments to that Rule presents a classic case for application of the Rule.

In the Sanctions Opinion, with Kathrein not having contested the amount of the request made on Siegel's behalf (a request supported by a photocopy of the law firm's billings in connection

---

[4] This should not be misunderstood as an expression of any view on the merits of the nasty Kathrein-Monar dispute, in part of which Kathrein charges Monar with having abused Kathrein's children--the offspring of Kathrein's marriage to his former wife, who is now married to Monar. Instead the point is that whoever has the right of it in that dispute, Kathrein was not entitled to retaliate with the tactics revealed by the state court litigation and to abuse the judicial system in the way that he has in his federal litigation.

5

with this action, separated out from all other matters), this Court awarded the requested $20,228 as a sanction. Nothing that has happened in the interim calls for any change in that decision.

In that regard Kathrein's April 10 submission was principally devoted to fulminations against this Court (including his earlier-mentioned mischaracterization of the procedure that this Court had prescribed) and to a challenge to the imposition of any sanctions at all (rather than to the requested amount). In the later respect, Kathrein has attempted to justify his institution and pursuit of this action as assertedly carried on for a legitimate purpose and in good faith. But several factors--the patent nonviability of his claim, the entire pattern of his multiple litigation efforts to harm Monar (Kathrein had been made aware that Monar was also financing the defense of Siegel through Monar's own lawyers) and his consistent attacks on everyone who thwarts those efforts (including the Court of Appeals)--all divest his explanation of any persuasiveness. In short, everything that this Court said in the Sanctions Opinion in support of its determination that Kathrein had plainly violated Rule 11 remains intact.

Nor has Kathrein's most recent May 4 submission altered the situation. There his supporting Memorandum of Law portrays him as the victim of mistreatment by the judiciary, principally

6

charging our Court of Appeals' Appellate Order as having made numerous statements that were downright "false" (at Mem. 5 and Mem. 10 (twice)) and as having engaged in "an intentional misrepresentation of the facts" (Mem. 12)--and he precedes those calumnies with this overall accusation (Mem. 5):

> Where the Seventh Circuit did not possess facts to affirm, it imagined them.[5]

Again Kathrein's invariable inclination to behold a nonexistent mote in every judicial eye,[6] while never considering the beam in his own eye,[7] provides further support for the accuracy of the holding that in this action too he has violated Rule 11(b)(1) and (b)(2) in both subjective and objective terms.[8]

With Kathrein's liability for sanctions thus having been reconfirmed, the question of quantifying those sanctions may be addressed briefly. It will be recalled that he did not speak to that issue at all the first time around. And this Court's

---

[5] [Footnote by this Court] All of those pejorative statements were an amplification of what Kathrein had said in his April 10 submission, where he accused the Court of Appeals of having employed "imagined facts" (April 10 Mem. 3 n.1) and as having "manufactured facts" (id. 6).

[6] As to Judge McNamara, Kathrein's May 4 Mem. 9 charges her with "illegal methods" that amount to a "criminal violation."

[7] Matthew 7:3.

[8] As if to prove that Kathrein is an equal opportunity accuser, his May 4 Mem. 2 charges the Schuyler firm with "mail fraud," followed up with labeling it as a "corrupt law firm" (id. 3) guilty of "fraud" (id. 4).

7

examination of his most recent April 10 and May 4 submissions discloses no substantive treatment of the issue.

As for April 10, Kathrein's supporting Memorandum of Law is devoted entirely to the question of sanctions vel non, not to the appropriateness of the amount requested. And although his May 4 Memorandum of Law speaks of "fraudulent, 'padded' bills of the attorneys for Schuyler, Roche & Zwirner" and asserts that Kathrein has consulted with "other attorneys, each of whom agreed that plaintiff's petition for fees was excessive and likely fraudulent," those assertions speak only of the 15-page Ex. 1 to that Memorandum, which is Kathrein's analysis of the fees petition in the litigation before Judge Coar and <u>not</u> in this case. Whatever the situation may be in that regard would be for Judge Coar and not this Court to resolve (indeed, his March 31 opinion quite clearly appears to have already done so in the course of assessing Kathrein with more than $56,000 in sanctions). Finally, Kathrein's May 4 Mem. Ex. 5 does nothing more than reprint the redacted Schuyler firm billings that were submitted in support of the sanctions motion here, while offering nothing substantive as to the reasonableness of those billings.

All in all, nothing that Kathrein has tendered provides any basis for questioning the reasonableness of the time expended by the Schuyler firm in this action or the hourly rates charged by its members. Any contention by Kathrein that disposing of his

claim was somehow a simple matter totally ignores the difficulties of coping with an adversary such as Kathrein, with his demonstrated bent toward total warfare. In sum, this Court reconfirms the imposition of sanctions in the amount of $20,228.

## Conclusion

To repeat, in Rule 11 terms Kathrein's subjective violation runs afoul of Rule 11(b)(1), while the objective deficiencies in his lawsuit run afoul of Rule 11(b)(2).[9] Either such violation would suffice to mulct Kathrein in sanctions. He is again ordered to pay Siegel the sum of $20,228.

                                                                Milton I. Shadur
                                                                 Senior United States District Judge

Date: May 16, 2006

---

[9] That latter deficiency is not altered by the fact that the dismissal of this action was ultimately upheld in the Appellate Order under Rule 12(b)(6), rather than by application of the Rooker-Feldman doctrine.

9

IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

MICHAEL L. KATHREIN,              )
                                  )
                Plaintiff,        )
                                  )
     v.                           )    No.  05 C 1718
                                  )
R. J. SIEGEL,                     )
                                  )
                Defendant.        )

                     MEMORANDUM OPINION AND ORDER

     After this Court's June 28, 2005 dismissal of the Complaint
and action brought by pro se plaintiff Michael Kathrein
("Kathrein")--a dismissal that Kathrein appealed immediately--
counsel for defendant R.J. Siegel ("Siegel") filed a motion for
sanctions against Kathrein under Fed. R. Civ. P. ("Rule") 11.
Siegel's counsel had earlier complied with the preconditions to
such a Rule 11 motion:

     1.  On May 5 counsel had notified Kathrein of the
     intent to serve him with a letter and motion pursuant to
     Rule 11, asking Kathrein to withdraw his Complaint.

     2.  On June 8 counsel in fact served the appropriate
     letter notice demanding withdrawal (Ex. 1 to this opinion),
     coupling that notice with a Motion for Sanctions that
     identified (1) sheer harassment and the needless increase in
     litigation costs as Kathrein's impermissible motivations for
     bringing this lawsuit (see Rule 11(b)(1)) and (2) a lack of
     the required reasonable prefiling investigation on

                              EX. 1

Kathrein's part (see the introductory portion of Rule 11(b)).[1]

In turn Kathrein has timely responded to the sanctions motion, and Siegel has filed the scheduled reply. Accordingly the motion is ripe for decision.

Just a few words should be said about the 21-day escape hatch set out in Rule 11(c)(1)(A). It is quite true that the June 28 dismissal of Kathrein's action came 20 days after Siegel's June 8 notice. But there is no room for Kathrein to argue that if he had been given the full 21 days he would have withdrawn his pleading: To the contrary, his immediate appeal from the dismissal shows him to be unregenerate on that score. That situation brings into play the discussion in Methode Elec., Inc. v. Adam Techs., Inc., 371 F.3d 923, 926-27 (7th Cir. 2004)(adapted to this case):

> We could conclude that [Siegel was] in substantial compliance with Rule 11; or we could find that it was impossible for [him] to comply with Rule 11; or we could determine that [Kathrein] waived [his] right to a 21-day safe harbor.

Kathrein can scarcely complain that he lacked the full opportunity to withdraw his Rule-11-violative filing.

Now to the balance of Kathrein's response. At the outset he

---

[1] On June 10, when this Court then established a briefing schedule on Siegel's earlier-filed alternative motion to dismiss or for summary judgment, this Court also indicated that Rule 11 sanctions could be imposed on Kathrein.

2

poses a purported jurisdictional objection, asserting that his pending appeal ousts this Court of jurisdiction to deal with the sanctions motion. But in that regard he mistakenly relies on a Seventh Circuit decision that states the unremarkable principle that after a notice of appeal has been filed, the District Court loses jurisdiction to alter the judgment from which the appeal has been taken. That principle simply does not apply to motions for Rule 11 sanctions--see, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990). As Gregory Joseph has stated in his Sanctions: The Federal Law of Litigation Abuse 331 (3d ed. 2004 cum. supp.):

> This jurisdiction-divestiture doctrine is judge-made, not statutory in origin. It is a rule of prudence designed to prevent the confusion and inefficiency that would result if both the district court and the court of appeals were adjudicating the same issues simultaneously. Every circuit to consider the issue has concluded that the doctrine does not apply to postappeal Rule 11 motions or awards. They reason that a Rule 11 motion is separable and collateral from the decision on the merits and, therefore, the district court retains jurisdiction to entertain a Rule 11 application and impose sanctions after the notice of appeal has been filed.

Next Kathrein, under the caption "There is no justification for an award of sanctions in this action," sets out a miscellaneous set of scattershot quotations and statements that really do not bear on his sanctionable conduct that this Court has repeatedly identified and that Siegel detailed earlier in his motion for sanctions and has summarized briefly in his supporting

Mem. 4-6. In that respect Siegel has correctly identified Kathrein's bad faith motives of harassment and needlessly increasing litigation costs (see Rule 11(b)(1), as well as the absence of a reasonable prefiling investigation by Kathrein, causing him also to fail the Rule 11(b)(2) standard.

Finally Kathrein resorts to the type of regrettable name-calling that unfortunately marks the last-ditch tactic of some combatants who lack any meritorious substantive position: He charges this Court with "a spontaneous and malicious bias" against him that "should mandate...recusal." But before this litigation began this Court had never heard of Kathrein, and its dim view of him and his litigation tactics was derived solely from the litigation itself. That does not of course call for recusal, and Kathrein's wound in the form of sanctions is totally self-inflicted.

Accordingly Siegel's motion for sanctions is granted. It is supported by a showing of total fees billed for services amounting to the reasonable sum of $20,228, to which Kathrein has responded only with an unwarranted charge of "manipulative billing practices." Judgment is therefore ordered entered in favor of Siegel and against Kathrein in the sum of $20,228.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 23, 2005

4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Michael L. Kathrein,      )
                          )
          Plaintiff,      )
                          )
     v.                   )    No. 05 C 01718
                          )
R.J. Siegel,              )
                          )
          Defendant.      )

## MEMORANDUM

On March 13, 2006 this Court ordered simultaneous April 10 filings by the litigants--plaintiff Michael Kathrein ("Kathrein") and defendant R.J. Seigel--on the subject of possible Fed.R.Civ.P. ("Rule") 11 sanctions against Kathrein, which our Court of Appeals' unreported February 7, 2006 order had remanded for further consideration. As is this Court's regular practice when a disputed matter is such that simultaneous submissions appear appropriate, it also scheduled a status hearing for just a few days after the scheduled filing date (on April 13, 2006) to see whether the parties had met head-on as to the issues so that no further submissions were needed, or whether instead each side should file a further submission on any aspect or aspects as to which the initial submissions had not taken issue directly.

Unfortunately, as has too often been the case with his other submissions, Kathrein's April 10 filing has distorted the situation by changing the March 13 minute order's express scheduling of an April 13 "status hearing" to what he labels as

Ex. 2

an <u>evidentiary</u> hearing. From that mischaracterization Kathrein takes a quantum leap to the proposition that he "is being denied fair notice or opportunity to object to defendant's pleading" and that the order "violates Due Process for both parties." Worse still, Kathrein <u>knows</u> those statements to be false, because they are directly contradicted by the March 13 transcript that he himself has attached as Ex. 4 to his Emergency Petition For Writ of Mandamus referred to later in this memorandum (and lest that be challenged by Kathrein, a photocopy of the relevant pages from that transcript is attached as Exhibit 1 to this Memorandum--see particularly page 8 line 23 through page 9 line 4, page 10 line 21 through page 11 line 17 and page 11 line 21 through page 12 line 1).

That however is not the reason for the issuance of this memorandum in anticipation of the April 13 status hearing. Instead this memorandum is prompted by the fact that Kathrein, running true to form, has preceded his April 10 filing here with his April 7 filing of an Emergency Petition for Writ of Mandamus in the Court of Appeals.

"True to form" is used here advisedly, not because this is only the most recent of Kathrein's repeated efforts to rid himself of this Court as the decisionmaker here, but rather because of this Court's April 7 receipt of the April 6 issue of the <u>Chicago Daily Law Bulletin</u>--coincidentally arriving on the

2

same date that a copy of Kathrein's mandamus petition was delivered to chambers. That newspaper included a lengthy article that reported on and quoted at length from a March 31, 2006 memorandum opinion and order by Judge David Coar of this District Court, which imposed $56,858.15 in Rule 11 sanctions on Kathrein, in large part because he "sought to use this Court for improper purposes, including to avoid judges who had ruled against him in the Circuit Court of Cook County in a related case pending there." Judge Coar held that those litigation tactics had been frivolous and "that imposition of sanctions is proper to deter Plaintiff [Kathrein] from abusing the federal courts or seeking to use the judicial process for harassing ends."

That holding does not of course bind this Court, nor does it control these proceedings, but it may well also cast some light on Kathrein's motivations for his conduct in this lawsuit. In any event, it still remains to be seen whether Kathrein should be mulcted in Rule 11 sanctions in this case as well and, if so, in what amount. In that respect this memorandum advises the parties that this Court does not plan to address that subject until the Court of Appeals acts on Kathrein's renewed effort to get this Court off of the case. In the meantime, however, the April 13 status hearing will address the subject as to which the parties were expressly advised during the March 13 proceeding: whether further submissions are needed to provide the input for a fully

informed decision on the subject of sanctions.

                                                            _____
                                                            Milton I. Shadur
                                                            Senior United States District Judge

April 12, 2006.